Plaintiff, Mrs. Helen Vawter Agnew, sues for the recovery of four head of cattle, alleging that they were wrongfully taken from her possession by an employee, Hardy Thompson, and sold to one Harley Hopper who in turn conveyed them to defendant herein, Porter N. Mullenix.
Mullenix and Harley Hopper, the latter having been called in warranty, filed answers averring that the animals were purchased from Hardy Thompson as the agent of plaintiff; and that she, by reason of her conduct in permitting him to sell other cattle for her, is estopped to deny his authority to make the sales.
The district court, after a trial of the merits of the case, ordered the maintenance of the previously issued writ of sequestration and decreed plaintiff to be the owner of the property in dispute. It further ordered that she be placed in immediate possession of the animals and that her rights be reserved to obtain judgment for their value in the event they cannot be delivered to her.
This appeal by defendant Mullenix followed.
Counsel for appellant, in his brief, calls attention to three ways in which an agency *Page 107 
relationship may be created, namely, (1) by express authority; (2) by implied authority; and (3) by estoppel; and then he states: "It is the third relation of principal and agent that defendants in this case contend applies. The plaintiff, in this case, by permitting her employee, Hardy Thompson, to make sales of her cattle and permitting him to deal with third parties as her agent having such authority, estopps herself from denying such authority in the instances wherein the 4 head of cattle were sold that are the object of her suit."
Appellant's counsel further says: "Although it is not contended by the defendant that Hardy Thompson had authority to sell the 4 cattle that are the object of this suit, applying the well settled principle of agency by estoppel, the plaintiff has by her conduct brought about the situation that exists."
The doctrine concerning the estoppel of a principal to deny agency as to third persons is well stated, we think, in 2 Corpus Juris Secundum, verbo Agency, § 29, at page 1063. Therein it is said in part that:
"Where a person, by acts or conduct, has knowingly caused or permitted another to appear as his agent, to the injury of third persons who have dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will be estopped to deny the agency. However, all the elements of an estoppel must be present. There must be conduct calculated to mislead, it must be under circumstances which justify the claim that the alleged principal should have expected it to be relied and acted on, and further, it must have been acted upon in good faith to the injury of an innocent party. All this being present, it makes no difference that no consideration moved to the alleged principal. This rule is particularly applicable where the alleged principal has knowingly by such acts and conduct recognized the agency through a long course of dealings or in many transactions and has been applied in a great number and variety of transactions.
"From the foregoing rule it is obvious that there must have been some representation or conduct on the part of the person sought to be charged as principal, some act or omission, and if no intentional act on the part of the alleged principal appears, the ostensible agency, if it exists at all, must be based on some neglect of duty or want of ordinary care. Such acts or conduct must have been fraudulent or done by the principal with knowledge or with a reasonable ground for believing that another will alter his position adversely in reliance thereon, in which case actual fraud is unnecessary. It is not enough that the alleged principal permitted or authorized the agent to act for him on one or more previous occasions, nor will estoppel arise where the acts done were outside the scope of the apparent authority so that the principal would not have been bound had there been an actual agency but the relation must be conceded when the circumstances are such as would induce a reasonably prudent man to conclude that the relationship existed. * * *"
The record of the instant case discloses that plaintiff, Mrs. Agnew, owned and resided on a farm in Caldwell Parish, Louisiana, located some twenty miles from the City of Monroe, and in connection with it she operated a small dairy. Hardy Thompson was employed to do the milking, make the garden and perform other manual tasks, he receiving for his services a small salary plus a commission or bonus that was dependent upon the milk production.
Plaintiff also engaged in work as a stenographer at Monroe, Louisiana. She traveled to that city each morning, carrying with her the milk to be marketed, and returned to the farm in the late evening.
It was on or about January 12, 1942, that plaintiff learned that sales of the four head of cattle, the object of this suit, had been made by her employee, Hardy Thompson, to Hopper and by Hopper to defendant Mullenix. They had been sold without her authorization; and payment therefor was by means of Hopper's checks made payable to Thompson. Following the discovery, Thompson was discharged from his employment; and later, for his unlawful disposition of the stock, he was charged criminally, confessed guilt, and was sentenced to serve a term in the state penitentiary.
About one year previous to plaintiff's learning of the discussed unauthorized sales, she informed Thompson of her desire to sell some scrub cattle. On being told that he knew of a cattle buyer who might take them, she authorized him to attempt to make the sale. In this connection she wrote a note describing the animals to be sold, giving the price to be obtained, and instructing that the checks be made payable to her. The note was not addressed to any one, because the name of the suggested *Page 108 
buyer was not known to her. In two separate transactions, Harley Hopper purchased three of these cattle from Thompson. For them he gave two checks, in each of which plaintiff was named as payee.
The only other sale by Hardy Thompson that the evidence conclusively shows was made with the permission of plaintiff involved an old bull named Tony. This animal was of no value to plaintiff and she authorized its disposal to one A.J. Powell and permitted Thompson's retention of part of the sale's proceeds in payment of accrued bonuses due him.
In our opinion, plaintiff is not estopped to deny the agency of Thompson by virtue of the three described authorized transactions or otherwise. She made no representation to anyone that her employee, engaged to do manual labor on the farm, had general authority to sell her cattle; she knew nothing of his fraudulent acts; and her conduct was not of a nature to cause a reasonably prudent person to conclude that an agency relationship existed.
In the two authorized sales to which Hopper was a party, the latter made the checks payable to plaintiff as she instructed. If he had acted similarly when acquiring the four animals herein sought to be recovered, or had made reasonable inquiry as to the nature and extent of Thompson's authority, the dishonesty of Thompson would have been discovered with no resulting loss.
The authorized conveyance involving Tony was not made to Hopper. A.J. Powell was the purchaser. Certainly this isolated instance that concerned neither Hopper nor Mullenix did not suffice to effect equitable estoppel as to this plaintiff.
The case of Conner v. Hill Co., 6 La.Ann. 7, cited and relied on by appellant, does not appear to be applicable. A different factual situation is presented. Plaintiff, in that controversy, entrusted a flat boat load of corn to his son with authority to sell it. The son represented one Allen as being his partner and made statements that the corn belonged to both and that Allen had authorization to effect its sale. They purchased goods on joint account and said that when the corn was sold they would pay for the goods with the proceeds. Allen sold the boat and cargo to defendant and absconded with the proceeds of the sale. Plaintiff was compelled to bear the loss because of his own imprudence in confiding his property, with authority to sell it, to an irresponsible son.
No error is apparent in the judgment appealed from and it is affirmed.